1

2

3                                                          O

4

5

6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  LILY EIDEM, AN            )  Case No. EDCV 10-01000
    INDIVIDUAL,               )  VAP(DTBx)
12                           )
                Plaintiff,   )  **ORDER (1) GRANTING**
13                           )  **DEFENDANT'S MOTION FOR**
         v.                  )  **SUMMARY JUDGMENT AND (2)**
14                           )  **DENYING AS MOOT DEFENDANT'S**
    TARGET CORPORATION; AND   )  **MOTION TO BIFURCATE**
15  DOES 1 THROUGH 100,       )
    INCLUSIVE,                )  **[Motions filed on May 4 and**
16                           )  **May 11, 2011]**
                Defendants. )
17  _____)

18

19      On February 11, 2010, Plaintiff Lily Eidem

20  ("Plaintiff") slipped and fell in one of Defendant Target

21  Corporation's ("Defendant") stores.  Plaintiff brings

22  this action against Defendant for premises liability and

23  negligence, asserting Defendant is responsible for her

24  fall.  Before the Court is Defendant's motion for summary

25  judgment ("Motion") in its favor on both of Plaintiff's

26  claims.  For the reasons set forth below, the Court

27  GRANTS the Motion.

28

# I. BACKGROUND

On May 24, 2010, Plaintiff filed a complaint ("Complaint") against Defendant in the California Superior Court, County of Riverside.  (Doc. No. 1 (Not. of Removal), Ex. A.)  On July 7, 2010, Defendant removed the action to this Court on the basis of diversity jurisdiction, 28 U.S.C. § 1332.  (Not. of Removal.)

On May 4, 2011, Defendant filed the Motion.  On May 5, 2011, Defendant filed:  (1) a statement of undisputed facts ("SUF") (Doc. No. 59); (2) the declaration of Mathew J. Vande Wydeven ("Wydeven Declaration"), with exhibits A through D attached (Doc. Nos. 61-61-4); (3) the declaration of Jennifer Gallardo ("Gallardo Declaration"), with exhibit E attached (Doc. Nos. 62, 62-1); (4) the declaration of Michael Johnson ("Johnson Declaration"), with exhibit F attached (Doc. Nos. 63, 63-1); (5) the declaration of Shigeko Willard ("Willard Declaration") (Doc. No. 64); (6) the declaration of Krystal Hayes ("Hayes Declaration") (Doc. No. 65); (7) the declaration of Janelle Espinoza ("J. Espinoza Declaration") (Doc. No. 66); and (8) the declaration of Leonardo Espinoza ("L. Espinoza Declaration") (Doc. No. 67).  On May 11, 2011, Defendant filed a motion to bifurcate the liability phase and damages phase at trial ("Motion to Bifurcate").  (Doc. No. 78.)

1   On May 20, 2011, Plaintiff filed: (1) a reply and
2   objections to Defendant's SUF ("Plaintiff's Response to
3   SUF"); (2) a statement of genuine issues ("SGI"); (3) a
4   supporting memorandum of law ("Opposition")[1] (Doc. No.
5   81); (4) the declaration of Walter R. Huff ("Huff
6   Declaration"), with exhibits A through G attached (Doc.
7   Nos. 81-1-81-3); (5) the declaration of Elsa Siebert
8   ("Siebert Declaration") (Doc. No. 81-4); and (6)
9   opposition to the Motion to Bifurcate (Doc. No. 84).

10

11  On May 25, 2011, Defendant filed its reply in support
12  of the Motion to Bifurcate.  (Doc. No. 88.)  On May 27,
13  2011, Defendant filed: (1) a reply in support of the
14  Motion ("Reply") (Doc. No. 89); (2) a reply statement of
15  undisputed facts ("Reply SUF") (Doc. No. 90); (3)
16  objections to the evidence submitted by Plaintiff in her
17  Opposition ("Defendant's Evidentiary Objections") (Doc.
18  No. 91); (4) another declaration of Leonardo Espinoza
19  ("L. Espinoza Reply Declaration") (Doc. No. 92); (5) and
20  another declaration of Mr. Vande Wydeven ("Wydeven Reply
21  Declaration"), with exhibits A through E attached (Doc.
22  Nos. 93-93-5).  On May 31, 2011, Defendant filed a
23  supplemental declaration of Mr. Vande Wydeven
24  ("Supplemental Wydeven Reply Declaration"), with exhibit
25  F attached (Doc. Nos. 94, 94-1), and supplemental

26  _____

27      [1] Plaintiff's Response to SUF and Plaintiff's SGI are
    both contained within the Opposition, on pages 2 through
28  16.

objections to the Elsa Siebert Declaration ("Defendant's Supplemental Siebert Objections") (Doc. No. 95).[2]

On June 13, 2011, the parties came before the Court for the first scheduled hearing on the Motion.  At that hearing, the Court found that, based upon a recent ruling by Magistrate Judge David T. Bristow on Plaintiff's motion to compel, the parties should submit supplemental briefing on the limited issue of Defendant's constructive notice.  (Doc. No. 100.)  On July 25, 2011, Plaintiff submitted her supplemental opposition to the Motion ("Supplemental Opposition"), along with another declaration from Mr. Huff ("Supplemental Huff Declaration"), with exhibits A though C attached.  (Doc. No. 105.)  On July 28, 2011, Defendant submitted its supplemental reply in support of the Motion ("Supplemental Reply").  (Doc. No. 106.)  On August 18, 2011, the parties came before the Court for a hearing on the Motion.

---

[2] On May 31, 2011, Plaintiff filed a supplemental declaration from Mr. Huff in surreply to the Opposition. (Doc. No. 96.)  Under Local Rule 7-10, "[a]bsent prior written order of the Court, the opposing party shall not file a response to the reply."  Plaintiff did not request or receive approval to file her surreply, and accordingly, the Court does not consider it in deciding the Motion.

4

**II. FACTS**

**A.   Evidentiary Issues**

Both sides cite facts that are not relevant to resolution of the Motion.  To the extent certain facts are not mentioned in this Order, the Court has not relied on them in reaching its decision.  Furthermore, except as described below, the Court overrules the parties' objections, but has independently considered the admissibility of the evidence underlying the SUF and the SGI, and has not considered facts that are irrelevant or based upon inadmissible evidence.

**1.   Sham Affidavit Doctrine**

Both Plaintiff and Defendant challenge a number of facts and declarations submitted by the opposing party as being inadmissible because they contradict the declarant's prior testimony.  "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."  <u>Van Asdale v. Int'l Game Tech.</u>, 577 F.3d 989, 998 (9th Cir. 2009) (quoting <u>Kennedy v. Allied Mut. Ins. Co.</u>, 952 F.2d 262, 266 (9th Cir. 1991)).  Known as the "sham affidavit" rule, this rule serves to protect the summary judgment process from misuse.  As the Ninth Circuit has explained, "if a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own

prior testimony, this would greatly diminish the utility
of summary judgment as a procedure for screening out sham
issues of fact." Van Asdale, 577 F.3d at 998 (quoting
Kennedy, 952 F.2d at 266).

At the same time, "the sham affidavit rule is in
tension with the principle that a court's role in
deciding a summary judgment motion is not to make
credibility determinations or weigh conflicting
evidence." Van Asdale, 577 F.3d at 998.  Thus the rule
is applied with two limitations.  First, the rule "does
not automatically dispose of every case in which a
contradictory affidavit is introduced to explain portions
of earlier deposition testimony" and instead the "the
district court must make a factual determination that the
contradiction was actually a 'sham.'" Id. (quoting
Kennedy, 952 F.2d at 266).  Sham testimony is "testimony
that flatly contradicts earlier testimony in an attempt
to 'create' an issue of fact and avoid summary judgment."
Kennedy, 952 F.2d at 266.

Second, "the inconsistency between a party's
deposition testimony and subsequent affidavit must be
clear and unambiguous to justify striking the affidavit."
Van Asdale, 577 F.3d at 998-99.  The rule should not be
applied to exclude testimony where the allegedly "sham"
affidavit is merely "elaborating upon, explaining or

clarifying prior testimony" and contains only "minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence[.]"  Id. at 998 (quoting Messick v. Horizon Indus., 62 F.3d 1227, 1231 (9th Cir. 1995)).

Plaintiff first challenges the statements in the declarations of Leonardo Espinoza ("Mr. Espinoza") and Janelle Espinoza ("Mrs. Espinoza") (collectively, the "Espinozas") as being inconsistent with their subsequent deposition testimony.  (Supp. Huff Decl. ¶ 5.)  Plaintiff does not, however, identify any specific statements contained in the Espinozas' declarations that were contradicted in their depositions.  During his deposition, Mr. Espinoza stated that he did not remember all the details of what happened at the time of Plaintiff's fall, although he neither retracted nor contradicted the statements from his declaration.  (See Supp. Huff Decl., Ex. A (L. Espinoza Dep.).)  Without more, Plaintiff's challenges to the Espinozas' declarations do not support the allegations that they are "sham" declarations.  Accordingly, the Court overrules Plaintiff's objections and considers the facts contained in the Espinozas' declarations.

Plaintiff also challenges Defendant's supplemental interrogatory response in which Defendant asserts that

Store employee Shigeko Willard ("Willard") inspected the area where Plaintiff fell 14 to 15 minutes before her fall. (Pl.'s Supp. Opp'n at 5-6.) Plaintiff appears to argue the Court should discount Defendant's factual assertion because Willard did not include this fact in her initial declaration. (See id.) Although not directly contradictory to the earlier response, Defendant's newly submitted evidence regarding Willard's inspection of the floor where Plaintiff fell has the appearance of sham testimony. Given the importance of this fact to a premises liability claim, Willard's failure to include this fact in her declaration is more than a minor inconsistency. Moreover, Defendant does not provide any explanation why this fact was not previously disclosed or only recently discovered.

While the Court finds the factual assertion regarding Willard's floor inspection may be a sham, it need not decide the issue. As will be discussed in greater detail below, the outcome of the Motion does not depend on the admission of this fact. Accordingly, the Court declines to rule on Plaintiff's objection.

Defendant also challenges the Siebert Declaration as contradictory and a sham declaration. (See Def.'s Supp. Siebert Objections) As Defendant's counsel notes, Siebert's deposition testimony calls into question a

number of statements in her declaration.  (Supp. Wydeven
Reply Decl., Ex. F (Siebert Dep.).)  At her deposition,
Siebert disavowed a number of statements in her
declaration and declared at one point that a statement
from her declaration was "goofy" and incorrect.  (Id. at
72:18-22.)  Given the fundamental discrepancies between
the statements in Siebert's declaration and those in her
deposition, the Court sustains Defendant's objections and
does not rely upon the Siebert Declaration to support any
factual conclusions.

     The Court finds the following material facts are
supported adequately by admissible evidence and are
uncontroverted.  They are "admitted to exist without
controversy" for the purposes of the Motion.  L.R. 56-3;
see generally Fed. R. Civ. P. 56.

**B.   Undisputed Facts**

     On February 11, 2010, Plaintiff went to Defendant's
store located at 2755 Canyon Springs Parkway in
Riverside, California (the "Store").  (SUF ¶¶ 3, 6.)
Soon after entering the Store, in an aisle near the
Lingerie section, Plaintiff fell on the floor, injuring
her right shoulder.  (SUF ¶¶ 3, 9.)

     After Plaintiff had been sitting on the floor for
approximately three minutes, two shoppers at the Store,

1   the Espinozas, approached Plaintiff and Mr. Espinoza

2   helped Plaintiff to her feet.  (SUF ¶¶ 9-13.)   The

3   Espinozas did not see Plaintiff fall, but they heard some

4   noises and came to see what had happened.  (SUF ¶¶ 10,

5   11.)

6

7        Soon after the Espinozas reached Plaintiff, at least

8   two of Defendant's employees also arrived on the scene,

9   including Willard and Krystal Hayes ("Hayes").[3]  (SUF ¶¶

10  22, 61-63.)  Once Plaintiff was standing, one or two of

11  the onlookers helped her walk to a table in the "Food

12  Avenue" area of the Store.  (SUF ¶ 30.)

13

14       Defendant's employee Jennifer Gallardo ("Gallardo"),

15  who was the "Leader on Duty" at the Store at the time,

16  heard about the fall and met Plaintiff sitting at a table

17  in the Food Avenue area.  (SUF ¶ 34.)  Gallerdo spoke

18  _____

19       [3] Plaintiff also challenges all of the declarations
     from Defendant's employees as "presumptively biased in
20   favor of their employer" and because "it may later even
     be proven that they may not entirely agree with the
21   contents of the declarations but were otherwise convinced
     to sign them."  (Opp'n at 19-20.)

22       At the summary judgment stage, a court should not
23   make determinations of credibility as to declarations.
     See, e.g. Self-Realization Fellowship Church v. Ananda
24   Church of Self-Realization, 206 F.3d 1322, 1330 (9th Cir.
     2000) (citing Anderson v. Liberty Lobby, 477 U.S. 242,
25   250 (1986)).  The declarations by Defendant's employees
     provide an adequate foundation to establish their
26   personal knowledge as to the facts they set forth.
     Moreover, the majority of the facts in the employees'
27   declarations are in accord with Plaintiff's factual
     allegations.  Accordingly, the Court overrules
28   Plaintiff's objections to the employees' declarations.

with Plaintiff about the fall, and Gallerdo filled out a "Guest Incident Report" (the "Report") with the details of the incident.  (SUF ¶¶ 40-42; SGI ¶ 9.)  Gallardo filled out the Report on Plaintiff's behalf because Plaintiff was unable to write due to her injured shoulder.  (SUF ¶ 42.)  After Gallardo filled out the Report based upon Plaintiff's responses, Plaintiff confirmed what was written in the Report and signed it. (SUF ¶ 43.)

In the Report, the "Guest Description of the incident" states Plaintiff "was walking and foot got stuck and went forward and fell on shoulder. She only saw scuff marks on floor."[4]  (Gallardo Decl., Ex. E.)  In answer to the question "Was the floor/ground clean and dry?" the "Yes" box was checked.  (Id.)

The Espinozas did not see any foreign substance or liquid when they walked along the aisle where Plaintiff fell five minutes before her fall.  (SUF ¶ 21.)

C.   Disputed Facts

Plaintiff asserts she fell because she stepped on a sticky substance on the floor.  (Wydeven Decl., Ex. B at 21.)  Defendant asserts that neither the Espinozas nor

---

[4] There were between one and three black marks on the floor near where Plaintiff fell, but Plaintiff does not believe these marks caused her to fall.  (SUF ¶ 7.)

11

1  any of its employees saw or felt any substance on the

2  ground that might have caused Plaintiff to fall.  (SUF ¶¶

3  14-17, 20, 26-29, 36-38, 55-58, 65-68.)

4

5      Defendant also asserts Plaintiff told Gallardo that

6  there "may have been nothing on the ground" in the area

7  where Plaintiff fell, and that she "might have tripped

8  over her own toe."  (SUF ¶ 44.)  Defendant asserts

9  Plaintiff made a similar statement that she might have

10  "stepped wrong" to the Espinozas.  (SUF ¶ 18.)  Plaintiff

11  disputes that she ever made such statements.  (SGI ¶ 14.)

12

13      Defendants assert the area where Plaintiff fell was

14  last inspected by Willard between 1:35 p.m. and 1:36 p.m.

15  on the day Plaintiff fell, so between 14 and 15 minutes

16  before Plaintiff's fall.  (Supp. Reply at 1; Supp. Opp'n;

17  id., Huff Decl., Ex. B.)  As previously discussed,

18  Plaintiff challenges this fact.

19

20                    **IV. LEGAL STANDARD**

21      A motion for summary judgment shall be granted when

22  there is no genuine issue as to any material fact and the

23  moving party is entitled to judgment as a matter of law.

24  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc.,

25  477 U.S. 242, 247-48 (1986).  The moving party must show

26  that "under the governing law, there can be but one

27

28

1  reasonable conclusion as to the verdict."  <u>Anderson</u>, 477
2  U.S. at 250.

3

4      Generally, the burden is on the moving party to
5  demonstrate that it is entitled to summary judgment.
6  <u>Margolis v. Ryan</u>, 140 F.3d 850, 852 (9th Cir. 1998); <u>In</u>
7  <u>re Oracle Corp. Sec. Litig.</u>, 627 F.3d 376, 387 (9th Cir.
8  2010).  The moving party bears the initial burden of
9  identifying the elements of the claim or defense and
10 evidence that it believes demonstrates the absence of an
11 issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477
12 U.S. 317, 323 (1986).

13

14     Where the non-moving party has the burden at trial,
15 however, the moving party need not produce evidence
16 negating or disproving every essential element of the
17 non-moving party's case.  <u>Celotex</u>, 477 U.S. at 325.
18 Instead, the moving party's burden is met by pointing out
19 that there is an absence of evidence supporting the non-
20 moving party's case.  <u>Id.</u>; <u>In re Oracle</u>, 627 F.3d at 387.

21

22     The burden then shifts to the non-moving party to
23 show that there is a genuine issue of material fact that
24 must be resolved at trial.  <u>Celotex</u>, 477 U.S. at 324;
25 <u>Anderson</u>, 477 U.S. at 256.  The non-moving party must
26 make an affirmative showing on all matters placed in
27 issue by the motion as to which it has the burden of
28

1  proof at trial.  <u>Celotex</u>, 477 U.S. at 322; <u>Anderson</u>, 477

2  U.S. at 252; <u>see also</u> William W. Schwarzer, A. Wallace

3  Tashima & James M. Wagstaffe, <u>Federal Civil Procedure</u>

4  <u>Before Trial</u> § 14:144.

5

6      A genuine issue of material fact will exist "if the

7  evidence is such that a reasonable jury could return a

8  verdict for the non-moving party."  <u>Anderson</u>, 477 U.S. at

9  248.  In ruling on a motion for summary judgment, a court

10  construes the evidence in the light most favorable to the

11  non-moving party.  <u>Barlow v. Ground</u>, 943 F.2d 1132, 1135

12  (9th Cir. 1991); <u>In re Oracle</u>, 627 F.3d at 387.

13

14                    **IV. DISCUSSION**

15      Defendant seeks summary judgment in its favor as to

16  Plaintiff's negligence claims on three grounds.[5]  First,

17  Defendant argues Plaintiff has not introduced any

18  evidence that there was a dangerous condition where she

19  fell in the Store, and thus Defendant cannot be held

20  liable.  (Mot. at 10-12.)  Second, Defendant argues that

21  assuming a dangerous condition did exist, Plaintiff has

22  not presented any evidence that  Defendant had actual or

23  constructive notice of the alleged dangerous condition.

24  (<u>Id.</u> at 12-15.)  Finally, Defendant argues Plaintiff was

25  the sole legal cause of her own injuries.  (<u>Id.</u> at 15.)

26  _____

27      [5] As Defendant notes, premises liability is a form of
negligence.  <u>See</u> <u>Brooks v. Eugene Burger Mgmt. Corp.</u>, 215
28  Cal. App. 3d 1611, 1619 (1989).

**A.   California Premises Liability Law**

Plaintiff argues Defendant was negligent in maintaining its premises.  In order to establish her negligence claim under California law, Plaintiff must show:  (1) a legal duty to use due care; (2) a breach of that duty; and (3) the breach as the proximate or legal cause of the resulting injury.  See, e.g., Jackson v. Ryder Truck Rental, Inc., 16 Cal. App. 4th 1830, 1837 (1993) (citing 6 Witkin, Summary of Cal. Law: Torts § 732 (9th ed. 1988)); see also Conroy v. Regents of Univ. of Cal., 45 Cal. 4th 1244, 1250 (2009) ("In order to establish liability on a negligence theory, a plaintiff must prove duty, breach, causation, and damages.") (internal citation omitted).

In California, a store owner owes a duty to its patrons to "exercise reasonable care in keeping the premises reasonably safe." Ortega v. Kmart Corp., 26 Cal. 4th 1200, 1205 (2001).  A store owner exercises ordinary care by "making reasonable inspections of the portions of the premises open to customers, and the care required is commensurate with the risks involved." Id. (citing Bridgman v. Safeway Stores, Inc., 53 Cal. 2d 443, 448 (1960)).  In a self-service grocery store where customers may take goods off the shelves, the owner may have to "take greater precautions and make more frequent inspections" to protect against the creation of dangerous

conditions.  _Ortega_, 26 Cal. 4th at 1205.  The "basic

principle to be followed in all these situations is that

the owner must use the care required of a reasonably

prudent person acting under the same circumstances."  _Id._

A store owner is not, however, an insurer of the

safety of its patrons.  _Moore v. Wal-Mart Stores, Inc._,

111 Cal. App. 4th 472, 476 (2003) (citing _Ortega_, 26 Cal.

4th at 1205.)  Thus, "the owner's actual or constructive

knowledge of the dangerous condition is a key to

establishing its liability."  _Ortega_, 26 Cal. 4th at

1206.  In order to impose liability on a store owner for

damages suffered by a visitor, the owner must "have

either actual or constructive knowledge of the dangerous

condition or have been able by the exercise of ordinary

care to discover the condition."  _Id._

In a negligence action, the plaintiff has the burden

of proving all of the elements of her claim.  _See Ortega_,

26 Cal. 4th at 1205-06 (citing Prosser and Keeton, _Torts_

§ 41 (5th ed. 1984)).  In order to establish the element

of causation in a premises liability claim, the plaintiff

must show that the store owner either directly caused the

dangerous condition or had actual or constructive

knowledge of the dangerous condition.  _Ortega_, 26 Cal.

4th at 1205-06; _Hatfield v. Levy Bros._, 18 Cal. 2d 798,

806 (1941) ("[The store owner's] negligence in such cases

16

1   is founded upon his failure to exercise ordinary care in

2   remedying the defect after he has discovered it or as a

3   man of ordinary prudence should have discovered it.").

4

5       "[W]here the plaintiff relies on the failure to

6   correct a dangerous condition to prove the owner's

7   negligence, the plaintiff has the burden of showing that

8   the owner had notice of the defect in sufficient time to

9   correct it." <u>Ortega</u>, 26 Cal. 4th at 1206.  The plaintiff

10  may prove the owner's notice with circumstantial

11  evidence, and "evidence that an inspection had not been

12  made within a particular period of time prior to an

13  accident may warrant an inference that the defective

14  condition existed long enough so a person exercising

15  reasonable care would have discovered it." <u>Id.</u> at 1210

16  (quoting <u>Bridgman</u>, 53 Cal. 2d at 447).

17

18  **B.   There is a Genuine Issue of Material Fact As To**

19  **    Whether A Dangerous Condition Existed**

20      Defendant first argues it is entitled to summary

21  judgment because Plaintiff has not demonstrated a

22  dangerous condition existed in the place where Plaintiff

23  fell.  (Mot. at 11-12.)  Similarly, Defendant's third

24  argument is that Plaintiff's fall was her own fault

25  because Plaintiff "stepped wrong" and just "tripped over

26  her own toe."  (<u>Id.</u> at 15.)  If no dangerous condition

27  existed and Plaintiff caused herself to fall, Defendant

28

1  did not breach any duty to Plaintiff to maintain its

2  premises in a reasonably safe manner, and was not the

3  cause of her injuries.

4

5      As stated earlier, however, the facts underlying both

6  parties' arguments are disputed.  Plaintiff asserts there

7  was something sticky on the floor that caused her to

8  fall, and she disputes Defendant's assertions that she

9  admitted to being at fault for the fall.  Defendant

10  argues the court should not credit Plaintiff's statements

11  in light of the many declarations from Store employees to

12  the contrary.  At the summary judgment stage, however,

13  the Court's role is only to determine whether a genuine

14  issue of material fact exists, not to make determinations

15  of credibility or weigh the evidence.  See Anderson, 477

16  U.S. at 255 ("Credibility determinations, the weighing of

17  the evidence, and the drawing of legitimate inferences

18  from the facts are jury functions, not those of a judge .

19  . . ruling on a motion for summary judgment[.]")

20

21      It is possible, as Defendant suggests, that a jury

22  could find Plaintiff's assertions not credible, and

23  conclude that there was no sticky substance on the floor.

24  Looking at the facts in the light most favorable to

25  Plaintiff, however, as this Court must, a reasonable jury

26  could find that Plaintiff did not cause herself to fall,

27  and instead fell due to a sticky substance on the ground.

28

1  See Van Asdale, 577 F.3d at 1000 (finding that although a
2  jury could find witness's declaration not credible, it
3  was sufficient to raise a genuine issue of material fact
4  foreclosing summary judgment).  Thus, despite the
5  numerous declarations submitted by Defendant in which its
6  employees state they did not find any substance on the
7  ground after Plaintiff's fall, the statements in
8  Plaintiff's deposition testimony regarding her fall raise
9  a genuine issue of material fact on that point.[6]

10

11      Thus looking at the facts in the light most favorable
12  to Plaintiff, Defendant is not entitled to summary
13  judgment on the grounds that there was no sticky
14  substance on the floor and Plaintiff caused herself to
15  fall.  Moreover, for the purposes of the Motion, the
16  Court will assume Plaintiff's fall was due to a dangerous
17  condition on the floor of the Store.

18

19  **C.  Plaintiff Has Not Presented Any Evidence**
20      **Demonstrating Defendant's Actual or Constructive**
21      **Knowledge of the Dangerous Condition**
22      Assuming, therefore, that a dangerous condition did
23  exist, Defendant argues it is still entitled to summary
24  judgment because Plaintiff cannot prove Defendant had
25  either actual or constructive notice of the condition.

26  _____

27      [6] This is so despite Plaintiff's "admission" in the
    Report, as her deposition testimony clarified and
28  explained her statements.

19

1   (Mot. at 12-15; Supp. Reply at 5-6.)  Plaintiff does not

2   attempt to argue Defendant had actual notice of the

3   dangerous condition, and relies instead on Defendant's

4   constructive knowledge of it.  (Opp'n at 18; Supp. Opp'n

5   at 2-4.)  She asserts that because Defendant is unable to

6   produce written evidence documenting store inspections,

7   the Court must deny the Motion.  (Opp'n at 18; Supp.

8   Opp'n at 6.)  Plaintiff's statement of the law is wrong.

9

10      As previously stated, Plaintiff carries the burden of

11  introducing evidence demonstrating that Defendant had

12  constructive notice of the dangerous condition.  See

13  Ortega at 1212 ("[P]laintiffs still have the burden of

14  producing evidence that the dangerous condition existed

15  for at least a sufficient time to support a finding that

16  the defendant had constructive notice of the dangerous

17  condition."); Moore, 111 Cal. App. 4th at 476 ("[T]he

18  plaintiff has the burden of showing that the owner had

19  notice of the defect in sufficient time to correct it.").

20  In order to survive Defendant's Motion, Plaintiff must

21  therefore present evidence regarding Defendant's alleged

22  constructive notice of the sticky substance on its floor.

23

24      The California courts repeatedly have emphasized the

25  importance of the plaintiff's burden of proof in such

26  cases.  In Ortega, the California Supreme Court upheld a

27  jury verdict in favor of a plaintiff who had slipped and

28

fallen on a puddle of milk on the floor of the
defendant's store.  26 Cal. 4th at 1204.  There, neither
side could produce evidence showing exactly how long the
milk had been on the floor.  Id.  The court held that the
plaintiff had met his burden of proof where he introduced
evidence that the milk "could have been on the floor for
as long as two hours, and at best the floor was not
inspected for 15 to 30 minutes."  Id. at 1210.

The court held that "evidence of the owner's failure
to inspect the premises within a reasonable period of
time is sufficient to allow an inference that the
condition was on the floor long enough to give the owner
the opportunity to discover and remedy it."  Ortega, 26
Cal. 4th at 1203.  The Ortega court emphasized, however,
that the burden of proof did not fall on the defendant,
because then a "failure to meet the burden would require
a finding of liability, effectively rendering the owner
an insurer of the safety of those who enter the
premises."  Id. at 1206.

In Moore, the plaintiff slipped and fell on a french
fry lying in a main aisle of one of the defendant's
stores.  Moore, 111 Cal. App. 4th at 475.  The french fry
came from a McDonald's restaurant located just inside the
store, and, while the plaintiff could not demonstrate
exactly how long the french fry was there, she introduced

evidence the aisle had been swept between 30 and 45 minutes before the accident occurred.  <u>Id.</u>  The jury found the defendant liable and awarded damages to the plaintiff.  <u>Id.</u>

The California Court of Appeal reversed the verdict because the jury had not been instructed that the defendant could only be held liable if it had either actual or constructive knowledge of the dangerous condition.  <u>Moore</u>, 111 Cal. App. 4th at 479-80.  The <u>Moore</u> court emphasized that California law includes the knowledge requirement for a finding of negligence because without it, "certain store owners would essentially incur strict liability for slip-and-fall injuries, i.e., they would be insurers of the safety of their patrons."  <u>Id.</u> at 479.

The "mere possibility" that a defendant had notice of a dangerous condition is not enough to impose liability under California law, and "when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant."  <u>Ortega</u>, 26 Cal. 4th at 1205-06.  Evidence of the defendant's knowledge is thus critical to a determination of liability on summary judgment.  <u>See, e.g.</u>, <u>Lively v. Wild Oats Market</u>, No. CV 04-0117 RGK (RCx), 2006 WL 5085248 (C.D. Cal. Nov. 3,

1  2006) (granting summary judgment for defendant where

2  evidence showed defendant's manager had inspected the

3  area where the fall occurred five minutes before

4  plaintiff's fall); Ziplusch v. LA Workout, Inc., 155 Cal.

5  App. 4th 1281, 1285 (2007) (reversing trial court's grant

6  of summary judgment for defendant where plaintiff

7  submitted evidence in the form of her declaration and

8  defendant's employee's testimony that the defendant had

9  not inspected its equipment for at least 85 minutes

10  before the incident).

11

12     Here, Plaintiff has not submitted any affirmative

13  evidence regarding Defendant's constructive notice of the

14  alleged sticky substance on which Plaintiff fell.  The

15  only evidence on that issue is the disputed testimony

16  that Defendant's employee Willard inspected the area

17  where Plaintiff fell 14 to 15 minutes before her fall.

18  Because Plaintiff bears the burden of proving Defendant's

19  negligence through constructive notice, her failure to

20  introduce any relevant evidence requires the Court to

21  grant the Motion regardless of the evidence of Willard's

22  inspection.

23

24     Were the ultimate factfinder to find that Willard did

25  inspect the area where Plaintiff fell just 15 minutes

26  before the fall, Plaintiff's negligence action would fail

27  based upon Defendant's exercise of due care.  While the

28

California courts have not set forth a specific time period that constitutes adequate care, the relevant cases all concern time periods of a half hour or longer between inspection and accident.  <u>See</u> <u>Ortega</u>, 26 Cal. 4th at 12 (upholding verdict for plaintiff where milk might have been on the floor for two hours); <u>Ziplusch</u>, 155 Cal. App. 4th at 1285 (reversing grant of summary judgment where evidence showed defendant had not inspected the area for over 85 minutes); <u>Pineda v. Target Corp.</u>, No. CV 08-0315 AG (RNBx), 2009 WL 3244995, at *2 (C.D. Cal. Oct. 5, 2009) (denying defendant's summary judgment motion where evidence showed defendant had not inspected the area for 30 to 55 minutes, and it had actual knowledge of spill five to six minutes before plaintiff's fall).  The Court finds that Defendant's practice of inspecting its floors every 15 minutes does not breach its duty of care towards patrons.

     Alternatively, if the ultimate factfinder did not credit the evidence that Willard inspected the floor where Plaintiff fell 15 minutes before, there would be no evidence to support Plaintiff's claim.  Plaintiff's deposition testimony says nothing as to Defendant's inspection practices, nor did Plaintiff submit any testimony from Defendant's employees on that subject. Plaintiff argues the absence of written records regarding Defendant's inspection practices "imposes on Defendant

the burden of an adverse inference of constructive notice
of the dangerous condition that gave rise to Plaintiff's
injuries and that Defendant shall bear such burden at
trial in this action."  (Supp. Opp'n at 6.)  In so
arguing, Plaintiff misreads Ortega, which holds that a
negative inference may be drawn where the plaintiff has
submitted "evidence that an inspection had not been made
within a particular period of time prior to an
accident[.]"  Ortega, 26 Cal. 4th at 1210.  When there is
a lack of evidence, as there is here, the inference must
be drawn against Plaintiff, whose burden it is to prove
her case.  Having submitted no evidence at all on the
issue of inspection, Plaintiff has not met her burden.

     On a motion for summary judgment, where the nonmoving
party will bear the burden of proof on an issue at trial,
the moving party can prevail merely by pointing out to
the district court that there is an absence of evidence
to support the nonmoving party's case.  Celotex, 477 U.S.
at 324-25; see also Liberty Lobby, 477 U.S. at 257
("[T]he plaintiff must present affirmative evidence in
order to defeat a properly supported motion for summary
judgment.  This is true even where the evidence is likely
to be within the possession of the defendant, as long as
the plaintiff has had a full opportunity to conduct
discovery.").

1    Here, Plaintiff has failed to meet her burden of

2 introducing adequate evidence to support her negligence

3 claims.  Looking at the facts in the light most favorable

4 to Plaintiff and discounting the evidence of the floor

5 inspection 15 minutes before Plaintiff's fall, Plaintiff

6 cannot succeed on her claims.  Accordingly, the Court

7 finds Defendant is entitled to summary judgment in its

8 favor, and Defendant's Motion to Bifurcate is thus moot.

9

10                      **IV. CONCLUSION**

11    For the foregoing reasons, the Court GRANTS

12 Defendant's Motion for Summary Judgment and DENIES as

13 moot Defendant's Motion to Bifurcate.

14

15

16 Dated:   August 24, 2011

17                      VIRGINIA A. PHILLIPS
                   United States District Judge
18

19

20

21

22

23

24

25

26

27

28